# CHARLES GOLDSBOROUGH *v.* ARTHUR M. SIEGK
## ET AL., RECEIVERS.

*Mutual Insurance Company—Officer Loaning Securities—*
*Rights of Policy Holders—Bill by Receivers.*

There is no law requiring the deposit with the insurance commissioner or state treasurer of securities constituting part of the guaranty capital of a mutual fire insurance company.   p. 566

Where an officer of a mutual insurance company loaned securities to the company in order to increase its surplus so as to comply with the requirements of another state, and such securities were listed as assets and part of its surplus in the annual statements of the company, signed and sworn to by such officer, he could not withdraw them, even with the consent of the directors, as against any persons who did business with the company relying on the annual statements, nor as against any persons who did business with the company in such other state after the deposit of the securities.                                 pp. 568, 569

As against such persons, the company held the securities impressed with a trust, on the principle that where one accepts money or property to hold for the use of another, he becomes a *quasi* trustee for the beneficiary in relation to the thing so held.
                                                                                 p. 569

A suit by the receivers of the company against such officer to recover the securities so withdrawn, or their value, was properly brought in equity.                                                     p. 569

A bill by the receivers for this purpose was not defective because it failed to allege that an assessment on the policy holders would not have produced enough to satisfy claims against the company, or that the company was insolvent at the time of the withdrawal of the securities, but it was defective in failing to allege that any of the claims from the other state accrued after the deposits were made, or that claimants elsewhere became such with knowledge of, and relying on, the company's representations as to surplus.                     pp. 569, 570

Acts 1922, ch. 492, providing that advances made by directors, officers, or members of mutual insurance companies to such companies, in order to comply with surplus or other legal requirements, shall be payable only out of surplus after providing for all liabilities, did not apply to a deposit of securities with a company, made by one of its officers before the passage of the act, though the securities were not withdrawn by him immediately thereafter.                    p. 569

*Decided April 21st, 1926.*

· Appeal from the Circuit Court No. 2 of Baltimore City (STANTON, J.).

Bill by Arthur M. Siegk and J. Morfit Mullen, receivers for the Federal Mutual Fire Insurance Company of Baltimore City, against Charles Goldsborough. From an order overruling a demurrer to the bill, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*John Holt Richardson* and *Allan W. Rynhart,* for the appellant.

*Johnston V. Best* and *James Morfit Mullen,* for the appellees.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint in this case alleges proceedings by the State Insurance Commissioner in the Circuit Court No. 2 of Baltimore City for the appointment of a receiver for the Federal Mutual Fire Insurance Company of Baltimore by reason of the unfavorable condition of said company at the close of the year 1923, as shown by its annual statement for that year and its failure to make good a deficiency in its assets on the demand of the commissioner; that Arthur M.

Siegk was appointed receiver on December 23rd, 1924, and subsequently, on January 19th, 1925, J. Morfit Mullen was appointed co-receiver and both have duly qualified; that the receivers have by the order of said court, dated March 4th, 1925, been authorized and directed to file suit against Charles Goldsborough for the recovery, for the benefit of said company, of certain assets later referred to and described; that the original business of said company was principally the insurance of whiskey, in which it did a profitable business until the adoption of the Eighteenth Amendment and the passage of the Federal Prohibition Law, after which it became necessary for the company to engage in the general fire insurance business; that its business in the year succeeding 1919 showed a change for the worse; that being a mutual company, it had no capital stock, but its assets over those actually expended for its losses, expenses and other business disbursements were carried and described as a surplus; that about the first of the year 1921 its surplus fell below $50,000 and, in order to continue to do business in Massachusetts, a surplus of $50,000 was necessary; that defendant, who was at that time president of the company and a director, made an offer, which was duly accepted by the company, as appears from the minutes of a director's meeting held on February 9th, 1921, as follows:

> "Secretary reported that the company was short of $13,000 in its surplus of $50,000, which was necessary for the renewal of license in Massachusetts. Mr. Goldsborough offered to contribute $11,000 and Mr. Grove $2,000 to be deposited with the Company as paid-up capital, drawing 2% interest per annum, this to be returned when surplus over all liabilities amounts to $63,000, or any time prior to same upon vote of the directors;"

That on February 26, 1921, the company rendered its annual statement signed and sworn to by the defendant for the year 1920 to the Insurance Commissioner, reporting therein, among "bonds and stocks acquired during 1920"

and "ledger assets" of the company, liberty loan bonds amounting to $13,000, as having been acquired by the company on December 30, 1920, the first eleven bonds having been "contributed by Charles Goldsborough" and the remaining four bonds having been "contributed by Thomas C. Grove"; that $13,000 was reported in said statement as "guaranty capital paid up," which being added to the surplus of the company brought said surplus up to $51,-414.58, as shown by said statement; that later, prior to April 13, 1921, a report was received from the Massachusetts Insurance Department by said company advising it of a deficit of $7,000 in its surplus, and an offer was made by the defendant, and duly accepted by the company, as appears from the minutes as follows:

"Report from Massachusetts Insurance Department was received advising us of a deficit of $7,000 in our surplus, which it would be necessary to make up, and the opportunity was given the directors to contribute by depositing securities with the company at 2%. As no one desired to make up this offer, the president stated that he would do so."

That in this total deposit of $20,000 the defendant deposited with the company $18,000, and Thomas C. Grove, vice-president, deposited $2,000, all in liberty bonds, and they executed and delivered to the insurance department of Maryland a certificate, a copy of which is filed with the bill, as Exhibit 1; and the commissioner certified to the insurance commissioner of Massachusetts that the surplus had been made good, and in consequence thereof the company was able to continue its license to do business in Massachusetts; that thereafter, prior to the end of the year 1921, when it appeared that the surplus had become further impaired, the said Goldsborough, as shown by the annual statement for said year, did deposit with the company further securities, withdrawing, however, from said "guaranty capital paid up" liberty bonds of the value of $6,000, and substituting therefor certain stocks, and a liberty bond contributed by

said Grove of $1,000, and said defendant on December 31, 1921, executed and delivered another certificate to the insurance department of Maryland, listing said additional and substituted securities, and certifying to a deposit of $26,813 towards surplus, a copy of which certificate is filed with the bill as Exhibit 2; that the said securities were by the defendant and the company treated as assets of the company, constituting part of its surplus, and reported in the 1921 statement to the commissioner as assets of the company, contributed by the defendant, as follows: "Bonds and stocks constituting guaranty capital of the Federal Mutual Fire Insurance Company, Dec. 31st, 1921."

That during the year 1922 the surplus was further impaired and the defendant deposited further securities of the alleged value of $4,475, and executed and delivered to the commissioner a certificate dated May 16, 1922, a copy of which is filed with the bill, as Exhibit 3; and said commissioner certified the contents of said Exhibits 1, 2 and 3 to the insurance authorities of Massachusetts and treated the same as contributions by the defendant to the assets of the company for the security and benefit of its policy holders, whether residing in Massachusetts, Maryland or elsewhere; that in the annual statement to the commissioner at the termination of business in the year 1922, the defendant and the company treated said securities as contributions by the defendant to the company for its capital, and reported the same among the assets of the company under the caption: "Bonds and stocks constituting guaranty capital of The Federal Mutual Fire Insurance Company December 31st, 1922."

That said statement shows that at the end of 1922, only $2,000 in liberty bonds remained of the original liberty bond contribution of $20,000 to "guaranty capital paid up," the balance having been withdrawn by the defendant and Grove and corporate stocks substituted therefor, and the amount of "guaranty capital paid up" was reported as $30,188, and the total surplus, including "guaranty capital paid up" was reported as $35,435.61; that in the year 1923, the

business of the company continued to be still more unsuccessful, and at a time when the financial affairs of the company had become critical, the defendant resigned as president at a directors'. meeting held on July 11, 1923, the minute of which report is as follows:

> "After considerable discussion of the affairs and conditions of the company, Mr. Charles Goldsborough stated that he thought it would be best for him to resign as president and let Mr. Thomas C. Grove succeed him. Mr. Goldsborough also stated it was his intention to withdraw the securities he had placed with the company as a guarantee of surplus. Mr. Goldsborough then tendered his resignation as president.
>
> "Upon motion, duly seconded, Mr. Goldsborough's resignation was accepted."

That the statement to the commissioner for the year 1923 shows that the defendant has withdrawn from the assets of the company all of the securities deposited by him, and continues to retain them contrary to the demand of plaintiffs for their surrender to them as receivers of the company, or payment to them of the value of said securities with accretions thereof representing interest or dividends; that plaintiffs are advised that the actions of the defendant amounted to the creation of a trust fund of said securities for the benefit of the policy holders of the company in Massachusetts, Maryland, and elsewhere; and that the effect of the actions of the defendant in depositing said securities with the company, and his other actions in connection with the same, constituted said securities assets of the company to be used by it for the benefit of its policy holders or other creditors, the only circumstances under which the same could be released being when the surplus of the company (meaning thereby assets other than said securities) should be in excess of $50,000; and that said surplus since said contributions has never been in excess of said sum, but continued to decrease; that the directors of the company had no authority to permit said securities to be withdrawn from the assets of the company by the defendant, and the records of their proceedings show

that the defendant withdrew the same without the authoriza-
tion by the directors; that on learning of the depletion of the
assets and the surplus from the statement at the end of 1923
the insurance commissioner of Maryland took action against
the company; that except for the appearance of the securi-
ties deposited by defendant in the statements for the year
1921 and 1922 the company would have been proceeded
against by the commissioner two years before he took action,
and that the said actions of defendant in connection with
said securities resulted in the continuation of the operations
of the company for a period of about two years during which
time its assets continuously decreased; that under all the
aforesaid facts and circumstances the defendant is now es-
topped to assert that said securities do not belong to the com-
pany, to be applied or distributed to its policy holders, who
have suffered loss by fire, as well as to the other creditors of
said company; that the legal operation and effect of the con-
tributions, or deposits, or whatever characterization may be
given to defendant's acts as set out in the bill, resulted in the
creation of a fund for the benefit of the policy holders and
other creditors of said company, and that defendant and the
company in the public transactions aforesaid, to wit, the
annual statements for the State of Maryland and other states,
treated the same as assets of the company for the benefit of
policy holders or other creditors, and that, as the surplus of
the company from the time of said deposits continued to de-
crease, the defendant in withdrawing said securities from the
assets of the company, in effect took possession of trust funds
to which he was not entitled and which should be surren-
dered and delivered to plaintiffs as receivers of said com-
pany; that the company is hopelessly insolvent; that the cash
and other tangible assets coming into the hands of Arthur
M. Siegk on his appointment as receiver (excluding assess-
ments and other accounts receivable in the course of collec-
tion) approximate $2,000, and the liabilities of the company
aggregate more than $60,000; that there have been filed in
court or with the receivers claims for loss by fire amounting
to more than $73,000, among which are claims for losses in

Massachusetts aggregating more than $5,800, and no part of said claims have been paid; that the assets unlawfully withdrawn, as aforesaid, by the defendant are necessary for payment of the claims of said policy holders and other creditors of the company and plaintiffs are advised they are entitled to have the court direct defendant to return said securities or account for their value, together with interest, or dividends or accretions upon or connected with same; that plaintiffs do not know what interest or dividends or other income or returns were paid upon the said bonds, or stocks, but aver that some interest or other income from the same has been received by defendant to which the receivers are entitled.

The prayer of the bill is: (1) That a trust may be declared of said securities and that the court assume jurisdiction of same. (2) That defendant may be decreed to be a trustee of said trust funds, and be directed to account and restore the same, or their value to the receivers. (3) For discovery and account of all interest, dividends or accretions. (4) That in the event of disposition by defendant of said securities plaintiffs may have a money decree against defendant for their value with interest. (5) For further relief.

The three exhibits filed with this bill are certificates sworn to by defendant as president and T. C. Grove as vice-president of the company, each certificate giving a list and the amounts of securities deposited, and certifying: "The purpose of said deposit being to keep the surplus of said insurance company at $50,000, and do further certify that the said bonds (in No. 2 bonds and stocks, and in No. 3 stocks) will be retained in the possession of said company as long as needed for that purpose." The certificate show a total deposit of $31,288.

The defendant demurred to the bill "and to each and every paragraph thereof," the grounds of demurrer as stated being: 1. That plaintiffs have not stated such a case as entitles them to any relief in equity against defendant. 2. That there is a plain, adequate and complete remedy at law. The chancellor overruled the demurrer and from that order the appeal was taken.

The contentions of the defendant are:

1. That the only statute law bearing upon the transactions. mentioned in the bill of complaint is chapter 256 of the Acts of 1916, section 154 W, which provides that a mutual fire insurance company may establish a guaranty capital of not less than $25,000 nor more than $200,000, divided into shares of $100 each, which shall be invested in the same manner as is. provided for the investment of the capital stock of life insurance companies of the state; that the stockholders of the guaranty capital shall be entitled to semi-annual dividends of not more than four per cent., if the net profits or unused premiums, left after all expenses, losses and liabilities then incurred, with the reserve for re-insurance, are provided for, shall be sufficient to pay the same; that the guaranty capital shall be applied to the payment of losses. only when the company has exhausted its cash in hand and the invested assets exclusive of uncollected premiums, and when thus impaired, the directors may make good the whole or any part of it by assessments upon the contingent funds. of the company at the date of such impairment; that shareholders and members of such companies shall be subject to the same provisions of law relative to their right to vote as apply respectively to shareholders in stock companies and policy holders in purely mutual companies, that said guaranty capital shall be returned when the permanent fund of the company equals two per cent. of the amount insured upon all policies in force; that said guaranty capital may be reduced or retired by vote of the policy holders of the company and the assent of the insurance commissioner, if the net assets of the company above its re-insurance reserve and all other claims and obligations exclusive of guaranty capital,. for two years last preceding and including the date of its. last annual statement, shall be not less than twenty-five per cent. of the guaranty capital, after notice to each stockholder by mail and by advertisement in two newspapers for the time provided; that no company with a guaranty capital, which has ceased to do new business, shall divide among its.

stockholders any part of its assets or guaranty capital, except income from investments, until it shall have performed or cancelled its policy obligations.

And section 154T provides that every mutual fire insurance company may in its by-laws and policies fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by its cash funds; but such contingent liability shall not be less than an amount equal to and in addition to the cash premium written in his policy.

2. That chapter 492 of the Acts of 1922 (Code, art. 48A, sec. 122), went into effect after the last deposit of defendant and therefore does not apply to this case. That section provides that:

. "Any director, officer or member of any such company, or any other person, may advance to such company any sum or sums of money necessary for the purpose of its business, or to enable it to comply with any surplus requirements, or any other requirements of the law, and such moneys, and such interest thereon as may have been agreed upon, not exceeding six per cent. per annum, shall be payable only out of the surplus remaining after providing for all reserves and other liabilities, and shall not otherwise be a liability or claim against the company or any of its assets. No commission or promotion expenses shall be paid in connection with the advance of any such money to the company, and the amount of such advance shall be reported in each annual statement."

3. That the deposits in question did not constitute guaranty capital of the company, because: a. the guaranty capital was not divided into shares; b. the securities were not deposited with the insurance commissioner or state treasurer; This point may as well be disposed of in passing. We know of no law requiring securities to be deposited with either of these officials, in case of fire insurance companies. c. That even if the deposits constituted guaranty capital, the receivers are not entitled to look to the withdrawn securities,

as it is necessary for them to assess the policy holders to make up the deficit; and there is no allegation in the bill of complaint that such assessment would not produce the required amount.

4. That the bill shows an excess of $5,000 of assets over liabilities in the beginning of 1923, and there is no allegation that liabilities exceeded assets at the time of the withdrawal of securities.

5. That the deposit of securities was for the purpose of raising the surplus to $50,000, made to satisfy the requirements of the State of Massachusetts for the protection of its citizens; that the deposit was a callable loan of securities, and the loan being called when the company was paying its debts, and had a surplus, neither the company nor the receivers can demand the return of the securities.

6. That the special nature of the deposit was known to the insurance commissioner of Maryland.

7. There is no allegation as to the effective dates or periods of the policies of Massachusetts policy holders mentioned as suffering losses; nor dates of other losses.

8. That the insurance commissioner was guilty of laches in not filing his bill of complaint for the appointment of a receiver.

9. That the company would have had no right to bring this action against the defendant, and the receivers are vested with no greater rights than the company had.

At the threshold of this inquiry it is important to determine the nature of the deposits made by the appellant; and in this connection it is to be noted that there is nothing in the bill of complaint and exhibits to show that the law of Maryland, as it was at the time the deposits were made, or as it is now, required the Federal Fire Insurance Company to have a surplus, as such. The Act of 1916 authorized, but did not require it.

And it seems apparent, so far as the record discloses, that the only purpose of appellant in making, and the directors of the company in accepting, appellant's offer, was to meet

the requirements of the State of Massachusetts. Every time
a deposit of securities was made it was in response to a notice
from the authorities of that state. There is nothing in the
record to show that the company ever created a surplus under
the provisions of the Act of 1916, or that the deposits of
appellant were intended to be contributions to a surplus au-
thorized by that act.

The minute of the directors' meeting of February 9th,
1921, when the first deposit was made, shows that appellant
and Mr. Grove offered to contribute $11,000 and $2,000 of
bonds respectively "as paid up capital, drawing two per
cent. interest per annum," but that this was "to be returned
when surplus over all liabilities amounts to $63,000, or any
time prior to same upon vote of the directors." This last
provision is not consistent with the idea of any sort of con-
tribution to capital. What seems to have been contemplated
was that the contributions made at that time, and subse-
quently, should be retained by the company as long as they
were necessary to keep the surplus up to $50,000, so that the
company might do business in Massachusetts; or until the
directors voted to forego that part of the company's business.
The transaction amounted to a loan of assets for a definite
purpose so far as the contributors and the directors were
concerned.

But while that apparently was the purpose of those imme-
diately connected with the transaction, such purpose was not
disclosed to the public by the annual statements of the com-
pany signed and sworn to by the said contributor, filed with
the insurance commissioner, abstracts of which he is required
by law to publish. In these statements these contributions
were listed as assets of the company and as a part of its sur-
plus, and there was no reservation as to the purpose for which
the surplus might be used. The public therefore had a right
to rely upon these statements as true representations of the
strength of the company. As to subsequently accruing claims
of those doing business with the company *anywhere, relying
on these statements,* and of *all persons* doing business with

the company *in Massachusetts,* the company held these contributions impressed with a trust, on the familiar principle that where one accepts money or property to be held for the use of another he becomes a *quasi* trustee for the beneficiary in relation to the thing so held; and no technical language is necessary to create such a relation. *American Casualty Ins. Company's Case,* 82 Md. at p. 560; *Coyne v. Supreme Conclave,* 106 Md., at p. 56; *Clark v. Callahan,* 105 Md., at p. 614; *Basshor Co. v. Carrington,* 104 Md. 629; *Hayne v. Metropolitan Trust Co.,* 67 Minn. 245, cited in *Vandiver v. Poe,* 119 Md., at p. 354.

And where the donor represents conditions to exist between himself and the donee, which, if true, constitute him in equity the trustee of the donee, he is estopped to deny that such relation exists, as against any one having the right to rely on such representations and in fact acting on them. This is merely an application of the general principle of estoppel. But in order for this doctrine to apply it must appear that those invoking it are in a position to do so. It seems clear that for the enforcement of rights arising out of such relations equity is the appropriate tribunal. *American Casualty Insurance Company's Case,* 82 Md. 535; *Basshor Co. v. Carrington,* 104 Md. 606; *Beachey v. Heiple,* 130 Md. 683; *National Union Bank v. Miller Rubber Co.,* 148 Md. 449; *Legum v. Campbell,* 149 Md. 148; *Lupton v. American Wholesale Corporation,* 143 Md. 334; *Clews v. Johnson,* 182 U. S. 461.

We think the point is well taken by appellant, that the Act of 1922 does not apply to the case. It was passed after the last deposit was made, and the fact that the deposits were not withdrawn immediately after the passage of the act does not alter the situation, because appellant had no right to withdraw them.

The suggestion that appellant is relieved by laches on the part of the insurance commissioner cannot be sustained. Nor can those of alleged defects in the bill of complaint in failing to allege: 1. That an assessment on the policy holders would not have produced enough to satisfy claims against the com-

pany.  2. That the company was insolvent at the time of the withdrawal of securities.

There are not in the record data from which the priority of liability as between the premium notes and the guaranty fund can be determined.  We have not before us either the charter or the by-laws of the company.  This question must be left to be determined in the receivership proceedings.  But even if the premium notes should be held to be primarily liable and the solvency of the company should be established, in the meantime those claimants who became such after and upon the representation of a surplus of $50,000 are entitled to the protection of the securities deposited to maintain that surplus, as are all claimants in Massachusetts whose claims arose after the deposits were made.

But we find the bill of complaint defective in failing to allege:  1. That any of the Massachusetts claims accrued after the deposits were made.  2. That any claimants elsewhere became such knowing of the representations of the company as to surplus and relied upon them in their dealings with the company.  For these defects the demurrer should have been sustained.

The order overruling the demurrer will be reversed and the case remanded with leave to appellees to amend their bill of complaint within such time as may be allowed by the lower court.

> *Order reversed and case remanded with leave to amend bill of complaint, with costs to appellant.*

OFFUTT and PARKE, JJ., dissent.