# CHARLESTON.

BLUEFIELD NATIONAL BANK *v.* HAYES PICKLESIMER, *Receiver for Day & Night Bank of Williamson,* W. B. STACY *and* MRS. FREELOVE HURST.

(No. 5731—No. 5731-A)

Submitted September 1, 1926.   Decided September 14, 1926.

1. PRINCIPAL AND AGENT—*Principal Benefitted by Unauthorized Act of Agent, Cannot Deny Agent's Authority Without First Restoring Other Things So Acquired, or Paying Value Thereof.*

   A principal, benefitted by an unauthorized act of his agent, cannot deny the authority of the agent to do the act from which such benefit accrued, without first having restored the property or other thing so acquired, or paid to the injured party the value thereof.   (p. 134.)

2. BANKS AND BANKING—

   A deposit in bank by a debtor to the account of his creditor may be treated by the creditor as a credit on account, and cannot be withdrawn by the debtor or another claiming under him.   (p. 133.)

3. SAME—

   The maker may, for fraud, repudiate the obligation of an unhonored check before it has reached a holder in due course.   (p. 133.)

4. SAME—

   A creditor of an insolvent bank whose demand grows out of a fraudulent transaction perpetrated by an officer of the bank will ordinarily not be entitled to a preference over general creditors.   (p. 135.)

Appeal from Circuit Court, Mingo County.

Consolidated actions by the Bluefield National Bank against Hayes Picklesimer, receiver for the Day & Night Bank of

Williamson, and W. B. Stacy, and against the same receiver and others, to recover as a preferred creditor of the Day & Night Bank. From a decree for plaintiff in the first action, defendant Stacy appeals, and, from a decree in the second action, the receiver and others appeal.

*Affirmed as modified.*

*J. E. Wilkinson,* for appellant Stacy. .

*Goodykoontz & Slaven,* for appellant Hurst.

*Randolph Bias* and *Ira J. Partlow,* for appellant Picklesimer.

*James Damron,* and *French, Easley & Easley,* for appellee.

LITZ, PRESIDENT:

March 18, 1925, W. P. T. Varney, vice-president of the Day & Night Bank of Williamson, West Virginia, drew a check on the Bluefield National Bank for $8300.09, payable to the Day & Night Bank, and signed "W. P. T. Varney, Trustee". This check, indorsed by the Day & Night Bank through its cashier, C. W. Matheny, and deposited in the National Bank of Commerce of Williamson, in settlement of an account owing by the Day & Night Bank to the Bank of Commerce, was paid by the drawee March 21st.

March 19th Varney deposited $2400.00 in the Day & Night Bank to the account of Mrs. Freelove Hurst, to whom he owed a large indebtedness, and forged two checks, one in his favor for $3000 on her account in the Day & Night Bank, and another for $6000 in favor of himself, "Trustee," on the account of W. B. Stacy in said bank. Having certified the two forged checks as vice-president of the Day & Night Bank, on the same day Varney took them to Bluefield where he called at the plaintiff bank just before closing time, informing its vice-president, R. B. Parrish, that he desired to deposit these checks, transact some other business and borrow $10,000 from the plaintiff for the use and benefit of the Day & Night Bank. Parrish having advised that all loans by the bank required the approval of its president, D. E. French, Parrish and Varney immediately interviewed Mr. French, to whom

Varney repeated his request for the loan in behalf of the Day & Night Bank, stating that due to the purchase by himself and associates of the stock of the bank certain depositors had withdrawn their accounts, causing reduction of the bank's reserve below the legal requirement. Varney further represented that it was necessary for him to secure a temporary loan in order to protect the reserve until he could return from Richmond, Virginia, where he was going in a few days to secure a loan of $50,000 on the real estate belonging to the bank. Upon these representations and the agreement on the part of Varney that repayment would be made in a few days and that the proceeds would not be withdrawn from the Bluefield National Bank, French reluctantly consented to the loan on the individual note of Varney secured by 100 shares of purported stock of the Day & Night Bank belonging to him.

March 20th the two forged checks and the proceeds of the $10,000 loan were deposited in the Bluefield National Bank to the credit of W. P. T. Varney, Trustee, and, simultaneously, as a part of the same transaction, a check for $10,000 drawn by Varney on his trustee account was deposited in said bank to the credit of the Day & Night Bank.

March 21st W. P. T. Varney, "Vice-President," drew and delivered a check for $7500 on the Bluefield National Bank payable to the said National Bank of Commerce. The morning of March 23d, Bluefield National Bank received a deposit of $6200 from the Day & Night Bank consisting of a check for $5500 drawn by W. P. T. Varney on a Huntington Bank, and a check for $700 drawn by him on his trustee account in plaintiff bank, with an attached memorandum from Varney stating that on his return to Williamson he "found they needed" $7500; that he was sending $6200 deposit to partly cover this item when it came in, and in a day or two would send another deposit more than sufficient to cover the balance. The Bluefield National Bank having honored the $7500 check March 23d, when presented by a holder in due course, paid it March 26th.

Late in the afternoon of March 23d, after close of business, the Bluefield National Bank was informed through the Fed-

eral Reserve Bank at Richmond that payment had been refused by the Day & Night Bank on presentation of the two certified checks for $3000 and $6000 theretofore deposited by Varney to the account of W. P. T. Varney, Trustee. Immediately telephoning the Day & Night Bank, the Bluefield National Bank discovered the checks had been forged, and that the 100 shares of stock attached to the $10,000 note by Varney were also forged. The Bluefield National Bank at once cancelled the $10,000 credit to the Day & Night Bank and charged back to it the $6200 deposit, consisting of the $700 and $5500 checks, which were afterwards returned.

March 25th, upon his note bearing the names of several indorsers, Varney in person obtained from W. B. Stacy at his home in Pike County, Kentucky, a loan of $6000, evidenced by check drawn by Stacy upon his account in the Day & Night Bank. Returning to Williamson, Varney went to the Day & Night Bank after business hours on the night of March 25th and there requested the Cashier, C. W. Matheny, to accept the genuine check of Stacy in lieu of the $6000 forged check. . Matheny as an officer of the bank refused to accept the genuine check, stating that he knew of no way to comply with Varney's request; but upon Varney's insistence finally accepted the check in his individual capacity (placing it in his pocket book), subject to Varney's future instructions, which were never given. The following morning Matheny delivered the check to the defendant Picklesimer, who took charge of the Day & Night Bank as Assistant State Banking Commissioner. March 25th Stacy, having been sent for by an official of the Day & Night Bank, instructed those in charge of the bank to refuse payment of the genuine check, which was at the time retained by Picklesimer as evidence in the criminal prosecution of Varney. The same day an officer of the Bluefield National Bank re-presented the two forged checks for payment which was refused.

It having been ascertained that the Day & Night Bank was hopelessly insolvent, a few days later it was placed in the hands of Picklesimer as Receiver. Varney, an insolvent, has since been convicted and sentenced to a term in the penitentiary for his criminal acts in connection with the bank.

This suit was instituted by the Bluefield National Bank against Picklesimer, Receiver of the Day & Night Bank, W. B. Stacy and Mrs. Freelove Hurst, to recover, as a preferred creditor of the Day & Night Bank, a claim of $16,407.18 with interest from March 30, 1925, consisting of:

| | |
|---|---|
| Check drawn by Day & Night Bank March 20, 1925, and deposited to credit of Day & Night Bank in National Bank of Commerce, Williamson.............$ | 7,500.00 |
| Certified check of W. B. Stacy, forged........................... | 6,000.00 |
| Certified check of Mrs. Freelove Hurst, forged......... | 3,000.00 |
| | $16,500.00 |
| Less a balance owed by plaintiff to the Day & Night Bank ................................................................................. | 92.82 |
| | $16,407.18 |

The facts pertaining to all material matters, except the $2400 deposit made by Varney to the credit of Mrs. Hurst, and the genuine $6000 check obtained by him from W. B. Stacy, are alleged in the bill substantially as heretofore stated. With reference to these two items it is charged: (1) that Varney intended in making the $2400 deposit to the account of Mrs. Hurst that it should be applied by the bank on the $3000 forged check; and (2) that the genuine check of W. B. Stacy had been accepted by the bank to make good the $6000 forged check.

The Receiver filed an answer in the nature of a cross-bill denying the plaintiff's claim in its entirety (except the $7500 check) and averring that the $10,000 deposit by W. P. T. Varney to the credit of Day & Night Bank was a part of the assets of the defendant bank, and that upon a proper settlement between the two banks the Receiver was entitled to recover of the plaintiff the sum of $2592.82.

The answer of W. B. Stacy avers that Varney obtained the genuine check by fraud upon his note bearing forged indorsements. It also avers that Stacy stopped payment of this check and that it was never accepted by the Day & Night Bank nor deposited by it to the credit of Varney.

The separate answer of Mrs. Freelove Hurst denies the allegations of plaintiff's bill, as to the purpose of Varney in making the $2400 deposit to her account, and charges that he was then indebted to her in excess of that amount.

On final hearing it was held that for the fraud practiced upon it by Varney in securing the $10,000 loan, plaintiff was justified in cancelling the $10,000 credit to the Day & Night Bank resulting therefrom; and further decreed that the plaintiff recover of the receiver: (1) the sum of $6000, with interest, to be paid out of the funds in his hands to the credit of the defendant W. B. Stacy; (2) the sum of $2400, with interest, to be paid out of funds in his hands to the credit of the defendant Mrs. Freelove Hurst; and (3) the sum of $7881.24, the amount of the $7500 check less a credit of $92.82, with interest thereon from March 30, 1925.

The assignments of error by the defendants and cross-assignments by the plaintiff involve the whole of the final decree except the recovery of $7881.24 in favor of the plaintiff.

It having been shown that at the time of the deposit of $2400 to the credit of Mrs. Hurst Varney was indebted to her more than that amount, she is entitled to treat it as a credit on such indebtedness; and the plaintiff asserting the claim to this deposit by reason of the forged check would stand on no higher plane than Varney. The deposit of the money in the bank to the credit of Mrs. Hurst under these circumstances was equivalent to direct payment to her.

The reasons urged for requiring W. B. Stacy to pay the plaintiff the check forged on his account by Varney are certainly not more impelling. The charge in the bill that the Day & Night Bank had accepted the genuine check of Stacy under instructions from Varney to apply it in payment of the forged check is not sustained by the evidence. The delivery of the check by Varney to his agent Matheny did not strengthen the rights of Varney or those claiming under him. At the time Stacy instructed the bank to refuse payment the check had never been accepted by it. The plaintiff does not claim legal title to the check as a holder in due course but merely an equitable interest because of the alleged purpose of

Varney to have it applied to redeem the forged check. This being true Stacy was justified, because of Varney's fraud, in repudiating the personal obligation or promise evidenced by the check.

The contention of the Receiver that the $10,000 loan was made by the plaintiff to Varney individually and not for the benefit of the bank is without foundation. The uncontradicted evidence of Parrish and French disproves this contention beyond peradventure. The deposit of the proceeds of the loan to the credit of Varney, Trustee, and the immediate transfer thereof to the account of the Day & Night Bank as a part of the same transaction, were mere details and in no wise controvert the main fact that the loan was made for the benefit of the bank. Furthermore, the trustee account was apparently used by Varney in the interest of the bank. The transaction involving the drawing and transfer of the check for $7500 does not, as the Receiver contends, disprove the evidence in behalf of the plaintiff that Varney agreed at the time of the loan that it should remain intact in the plaintiff bank. Evidently when Varney drew this check on behalf of the bank he expected to make a deposit sufficient to take care of it. That he did not intend any part of the $10,000 should be used for that purpose is evidenced by the memorandum attached to the $6200 deposit requesting the bank to pay the check and stating that he would make a deposit in a day or two of more than the difference.

Concerning the liability of the Day & Night Bank with reference to the $3000 and the $6000 forged checks, the plaintiff is plainly entitled to recover as a general creditor the $8300.09, with interest, paid by it for the benefit of the Day & Night Bank before discovering the forgery of the $3000 and $6000 checks. These forged checks having been certified by Varney as vice-president of the bank, it will not be permitted to deny his authority without returning the fruits of his fraud. A principal, benefited by an unauthorized act of his agent, cannot deny the authority of the agent to do the act from which such benefit accrued, without first having restored the property or other thing so acquired, or paid to the injured

party the value thereof. *Union Bank & Trust Co.* v. *Long Pole Lumber Co.,* 70 W. Va. 558, 74 S. E. 674.

We cannot sustain the contention of the plaintiff that it should recover for the $7500 and $8300.09 checks as a preferred creditor of the Day & Night Bank, on the ground that the plaintiff was induced to pay these checks through the fraud of W. P. T. Varney acting in behalf of the Day & Night Bank. A creditor of an insolvent bank whose demand grows out of a fraudulent transaction perpetrated by an officer of the bank will ordinarily not be entitled to a preference over general creditors. *Citizens National Bank* v. *Dowd,* 35 Fed. 340. The cases relied upon merely hold that a depositor may recover as a preferred creditor of a bank for deposits accepted by it with knowledge of its insolvency,

The decree will therefore be modified in accordance with this opinion and in all other respects affirmed.

*Affirmed as modified.*