**SHAW, Banking Commissioner, v. LAMAR COUNTY. (No. 3512.)**

Court of Civil Appeals of Texas. Texarkana. March 22, 1928.

Rehearing Denied March 29, 1928.

Banks and banking ☞74—Banking commissioner cannot recover county school funds transferred to another bank by depository bank before its insolvency .(Rev. St. 1925, arts. 2544–2558).

Where bank designated as depository of county school funds, pursuant to authority of Rev. St. 1925, arts. 2544–2558, later because of complaint of directors who were sureties on depository fund and at a time that bank was still solvent, transferred deposits to another bank to credit of county treasurer, banking commissioner after insolvency of depository bank was not entitled to recover funds, there being no reason why such bank did not have a right to create a trust of such funds for benefit of county.

Appeal from District Court, Lamar County; Newman Phillips, Judge.

Suit by Charles O.· Austin, Banking Commissioner, against Lamar County, wherein James Shaw, having succeeded Austin as Banking Commissioner, was substituted as plaintiff. Judgment for defendant, and plaintiff appeals. Affirmed.

Jno. W. Goodwin and Joseph T. Goodwin, both of Austin, and R. E. Eubank, of Paris, for appellant.

Long & Wortham, Park & Dohoney, W. F. Moore, and Beauchamp & Lawrence, all of Paris, for appellee.

WILLSON, C. J. ·In pursuance of authority conferred by the statute (arts. 2544 to 2558, R. S. 1925), the Commissioners' Court of Lamar county, on March 26, 1925, designated the First State Bank of Paris (hereinafter referred to as the Paris bank) as the depository (for a period not exceeding two years from that date) of "all school funds belonging to said county," and on the same day approved the bond of said bank in the sum of $150,000 as such depository. From time to time thereafter until May 25, 1926, when the bank ceased to do business and was taken over by the banking commissioner, money belonging to said fund was deposited by said county with said bank as such depository. In February, 1926, directors of the bank who were sureties on its bond as such depository, complained because other directors who (it was claimed) had agreed to execute said bond as sureties had not done so. The ground of the complaint was, that said other directors were sharing in the profits to the bank as such depository, without sharing the risk incurred by the ·directors who were sureties on the bond. It was suggested that the ground of the complaint be removed by returning to the county the. funds held by the bank as depository. It' was objected that injury to the bank might result· from doing that. It was then suggested that the funds the bank held and would receive as depository be placed to the credit of the county in the Republic National Bank of Dallas (hereinafter referred to as the Dallas bank). The suggestion was approved by the complaining and other directors, and on February 17, 1926, the Paris bank began making deposits in the Dallas bank to the credit of "Lamar County School Fund, G. R. Coleman, Co. Treasurer." The deposits to the time the Paris bank ceased to do business amounted to $100,287.08. The Paris bank paid warrants drawn on it as the de-

---

pository of the school fund, and from time to time was reimbursed the amount of such payments by checks in its favor drawn on the Dallas bank by G. R. Coleman, the checks being signed "Lamar County School Fund, G. R. Coleman, Co. Treasurer." Coleman, besides being county treasurer of Lamar county, was cashier of the Paris bank. The checks so drawn by Coleman against the $100,287.08 so deposited with the Dallas bank amounted to $73,201.25, leaving $27,-085.83 as the balance remaining in the Dallas bank to the credit of the Lamar County School Fund at the time the Paris· bank ceased to do business. Afterward, to wit, on May 29, 1926, said balance of $27,085.83 was paid by the Dallas bank to John S. Baker, County Auditor of Lamar County, on a check drawn by Coleman in his favor signed "Lamar County School Fund, G. R. Coleman, Co. Treasurer." On the theory that said $27,085.83 belonged to the Paris bank, whose affairs were in his hands as banking commissioner, Chas. O. Austin, as such commissioner demanded same of Lamar county; and his claim therefor having been rejected, commenced this suit against said county, appellee here, to recover the money. In his petition Austin alleged that the deposits in the Dallas Bank to the credit of Lamar county belonged to the Paris bank, because same were made without authority from the board of directors of the Paris bank and without the knowledge of Lamar county, and in the absence of its consent to receive payment of its school fund in that manner. He alleged, further, that the Paris bank was indebted to others than Lamar county in sums aggregating several hundred thousand dollars, and that if the deposits to its credit in the Dallas bank constituted payments to it, same were illegal and void because at the times same were made the Paris bank—

"was, within the knowledge of its officers and directors, insolvent and contemplating insolvency and had committed acts of insolvency, and that said payments were made with a view to prefer as creditors of said bank the sureties on the aforesaid depository bond, said sureties being officers and directors of said First State Bank, and of preventing the application of the assets of said bank in the manner prescribed by law."

In its answer appellee, following a general denial, alleged that the money deposited in the Dallas bank was a part of its school fund and that same was placed and deposited in said Dallas bank—

"as a special fund for paying off and meeting the obligations of said school fund; that said funds were so used with the exception of the sum of $27,085.83, which remained in said Republic National Bank of Dallas, at the time of the closing of the First State Bank of Paris, Tex. That, after having been so deposited said monies were. no part of the assets of. the First State Bank of Paris, Tex., but being the property of defendant's school .fund as

4 S.W.(2d)—39

aforesaid, it has a right to receive and hold the same for school purposes."

The jury having found on special issues submitted to them, that the Paris bank was not insolvent at the time the deposits to the credit of G. R. Coleman, as county treasurer, were made in the Dallas bank, and that said deposits were not made in contemplation of the insolvency of the Paris bank, nor for the purpose, nor with the intent to prefer Lamar county as a creditor, the court rendered judgment denying appellant James Shaw (who succeeding said Austin as banking commissioner, had prosecuted the suit) a recovery of anything, and in favor of Lamar county for costs.

### After Stating the Case as Above.

We agree, the deposits by the Paris bank in the Dallas bank to the credit of "Lamar County School Fund, G. R. Coleman, Co. Treasurer," did not constitute .payments by' the Paris bank on its indebtedness as the depository of the Lamar county school fund. But, we do not agree with appellant in its further contention, that after the deposits were made they still ·belonged to and were subject to the control of the Paris bank.

As we view the case, it is that the Paris bank, being indebted to Lamar county, turned over to Coleman, as county treasurer of said county, funds for use in paying such indebtedness. The Paris bank having·done that, Coleman treated the funds as belonging to him as such county treasurer and subject to his control as such, and both the banks concerned acquiesced in that view of the matter.

The jury found, on evidence concededly sufficient, that the Paris bank was solvent at the time it made the deposits, and that same were not. made in contemplation of insol-vency and for the purpose, and with the intent, to prefer Lamar county as a creditor. That being the case, we see no reason why the Paris bank did not have a right to create the trust for the benefit of Lamar county, nor why, if Coleman could not lawfully hold the funds as county treasurer, he could not hold them for the county as an ordinary trustee. Sharon Grain Co. v. Farmers' Nat. Bank (Tex. Civ. App.) 277 S. W. 449; Allen v. Pollard, 109 Tex. 536, 212 S. W. 468; Christopher v. Davis (Tex. Civ. App.) 284 S. W. 253; Goldsborough v. Siegk, 150 Md. 557, 133 A. 472; In re Goodheart's Estate (In re Hewitt) 40 Misc. Rep. 322, 81 N. Y. S. 1030; Bluefield Nat. Bank v. Picklesimer, 102 W. Va. 128, 135 S. E. 257; McKee v. Lamon, 159 U. S. 317, 16 S.·Ct. 11, 40 L. .Ed. 165. In the case first cited above the court said: .

"It is generally held that, money or property being delivered by one person to another for a specific purpose, such as leaving money by one with another to be deposited in a bank or placed at interest, * * * or to pay the indebtedness of the former to a third party, the

person accepting the money becomes a trustee, and such a transaction created a trust."

So far as the record shows to the contrary, the Paris bank reserved no right to revoke the trust it created, and never attempted to revoke same. The deposits were upon no condition, and we think a duty to hold the funds and apply same to the payment of the Paris bank's indebtedness as depository, or until that indebtedness was satisfied in some other way, devolved upon the trustee.

The judgment is affirmed.