TERRELL v. COMMERCIAL NAT. BANK OF EL PASO et al. (No. 766.)

(Court of Civil Appeals of Texas. El Paso. Dec. 19, 1917. Rehearing Denied Jan. 10, 1918.)

1. BANKS AND BANKING $\Longleftrightarrow$171(5)—COLLECTIONS—NOTICE OF NONPAYMENT OF DRAFTS.

A bank that held a draft for 27 days without notifying the payee of nonpayment when instructed to give notice by wire was guilty of negligence, and liable for resulting loss.

2. BANKS AND BANKING $\Longleftrightarrow$175(5)—COLLECTIONS—ACTION FOR NEGLIGENCE—NOMINAL DAMAGES.

In such case, unless it appears that the drawer of draft would have realized something on the debt from drawee but for the bank's negligence, only nominal damages can be given.

3. BANKS AND BANKING $\Longleftrightarrow$175(3)—COLLECTIONS—ACTION FOR NEGLIGENCE—BURDEN OF PROOF.

To recover compensatory damages for negligence of a bank for failure to promptly notify drawer of the nonpayment of a draft, the burden of proof is upon plaintiff to show by preponderance of evidence that it could and would have recovered and applied to drawee's indebtedness money of the drawee on deposit in another bank, and such burden never shifts.

---

$\Longleftrightarrow$For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. BANKS AND BANKING &#9750;175(5)—COLLECTIONS—ACTION FOR NEGLIGENCE—MEASURE OF DAMAGES.

In such a case, the measure of damages would be the amount plaintiff would have so recovered not to exceed the amount of the draft.

Error from District Court, El Paso County; P. R. Price, Judge.

Suit by F. H. Terrell, trustee in bankruptcy of the Goldoft Liquor Company, against the Commercial National Bank of El Paso, Tex., and others. Judgment for plaintiff for partial relief only and he brings error. Affirmed.

Hudspeth & Harper and L. A. Dale, all of El Paso, for plaintiff in error. Beall, Kemp & Nagle and Turney, Culwell, Holliday & Pollard, all of El Paso, for defendants in error.

HIGGINS, J. Plaintiff in error, trustee in bankruptcy for the Goldoft Liquor Company, brought this suit against the Commercial National Bank, the State National Bank, both of El Paso, Tex., and the Gila Valley Bank & Trust Company of Globe, Ariz., to recover the amount of a draft in the sum of $2,000, drawn by the liquor company against C. A. Adams, of Globe, Ariz., same having been drawn through the Commercial National Bank on September 7, 1914. The case was tried without a jury, and judgment rendered for the plaintiff against all defendants in the sum of $1 and costs. There is no statement of facts in the record. Findings of fact, however, were filed by the trial court. A condensed statement of the findings is as follows:

C. A. Adams was indebted to the liquor company in the sum of about $4,000, and on September 7, 1914, the liquor company drew a draft upon him in the sum of $2,000 through the Commercial National Bank. The bank passed the amount of the draft to the credit of the liquor company. The draft was a protest item, and the Commercial Bank turned same over to the State Bank. The State Bank on September 8, 1914, sent same through the mail to the Gila Valley Bank & Trust Company. The State Bank directed the Gila Bank to wire if same was not paid. The Gila Bank received the draft on September 10, 1914, and held it until October 7, 1914, when it returned same to the State Bank, which in turn returned it to the Commercial Bank, and the latter bank then charged the liquor company's account with the amount thereof. When the Gila Bank presented the draft to Adams it was not paid. The Gila Bank failed to wire the State Bank of its nonpayment, and the liquor company had no notice of nonpayment until October 9, 1914. Upon receipt of the draft the Gila Bank went to Adams' place of business, but did not find him. Some days later, however, Adams promised that bank that he would pay the draft, but never did so. On the morning of Octo-

ber 10, 1914, the liquor company sent a representative to Globe. From and after September 15, 1914, Adams has been insolvent. From September 8 to September 28, 1914, Adams had on deposit in the First National Bank of Globe, Ariz., various sums of money varying from $1,314.85 to $3,440.31. On September 28, 1914, this was reduced to $14.85, and on October 1, 1914, to 85 cents. Shortly after October 1st Adams left Globe, and his whereabouts have since been unknown. On September 7, 1914, most, if not all, of Adams' assets were covered by a chattel mortgage, which, together with the lien for rent, about equalled the value of his property.

[1, 2] In the latter part of September, 1914, various creditors other than the liquor company levied attachments against Adams' effects. The liquor company knew nothing about these suits until after the return of its draft. The evidence did not disclose the exact amount of Adams' indebtedness to his other creditors except the indebtedness to one Keating, who was secured and who realized the amount of his claim. However, the aggregate of Adams' indebtedness, other than that to Keating, was considerable, and if any of the attaching creditors realized anything upon their attachments, it was not as much as $200. The Gila Bank was negligent in failing to promptly notify the State Bank of the nonpayment of the draft. Had it done so, the State Bank would have notified the Commercial Bank, which in turn would have notified the liquor company, and the liquor company would have used ordinary diligence to collect its debt against Adams. At the time the draft was drawn the liquor company knew that Adams did business with the First National Bank of Globe but had no information as to whether or not he had any money in such bank. Whether the liquor company would have realized anything on its debt, or what sum it would have realized had it pursued the remedies available to it, does not appear from the evidence, and the trial court, from a preponderance of the evidence, was unable to say that the liquor company had suffered damages in any specific sum.

Upon the facts so found, the court concluded as a matter of law that the defendant banks were bound to use due diligence in the presentation of the draft and to promptly notify if same was not paid, and failure to exercise due diligence in this respect rendered them liable for any resulting loss; that the burden of proof rested upon plaintiff to show the extent of his damages arising from the breach of duty on the banks' part; and that while the three banks were negligent in handling the draft, they were liable for nominal damages only because the plaintiff had failed to show with reasonable certainty the damages which it had sustained.

It is very clear that plaintiff in error is

---

&#9750;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

not entitled to recover on account of the negligence of the banks in the presentation and handling of the draft, unless it has sustained damage in consequence thereof. Injuria absque damno will not sustain an action. Story on Agency, § 236; 2 Bouvier's Law Dict. (Rawle's Third Revision) p. 1580. The burden of proof rested upon plaintiff in error to show substantial damage and with reasonable certainty the amount thereof. Unless this was done, nominal damages only could be awarded.

The trial court made a general finding that it does not appear from the evidence whether the liquor company would have realized anything on its debt against Adams, or what sum it would have realized, had it pursued the remedies available to it. In that state of the evidence, the court could not have rendered a judgment for more than nominal damages. In the absence of a statement of facts this court cannot review that finding. But in this connection, plaintiff in error insists that other facts found by the court rebut the finding indicated above. This insistence is based upon the finding with respect to funds belonging to Adams on deposit in the First National Bank of Globe and the finding that plaintiff would have exercised due diligence to collect its debt had it been promptly notified of its nonpayment. But it does not necessarily follow, as a matter of law, that in the exercise of due diligence the plaintiff in error would have garnished those funds in time to have impounded same. Nor does it necessarily follow, if it had promptly garnished, that it would have prevailed in the garnishment and recovered such funds. This court has no knowledge of all the evidence adduced upon the trial upon which the court based its finding that plaintiff had failed to show whether it would have realized anything upon its debt, or the amount it would have realized. The state of the evidence may have been such as to justify and support this finding, notwithstanding the fact that Adams had considerable funds on deposit in the First National Bank. In the absence of a statement of facts this court must uphold the general finding made by the trial court indicated above, unless its incorrectness is shown by other specific findings made.

[3, 4] Under its second proposition, plaintiff in error asserts that the burden of proof rested upon defendants in error to show that it could not and would not, in the exercise of reasonable diligence, have reduced to its possession and obtained the money on deposit in the First National Bank. On the contrary, the burden of proving this fact rested upon plaintiff in error. The burden never shifts from the plaintiff to establish by a preponderance of the evidence the facts upon which he relies for a recovery.

Boswell v. Pannell (Sup.) 180 S. W. 593. In order to establish plaintiff's right of recovery in this case, based upon the fact that Adams had funds with the First National Bank, it was necessary for it to show by a preponderance of the evidence that it could and would have recovered and applied to the payment of Adams' indebtedness the money or some of the money which he had on deposit with said bank. Until it did this, it had shown no substantial damage resulting from the defendants' negligence. Had it done this, it would have established a prima facie case, and the measure of its damage would have been the amount it would have so recovered, not to exceed the amount of the draft. The amount of the draft is in no wise material in determining the measure of damage until a prima facie case had been made in the manner indicated, and it then becomes material only as limiting the amount of recovery.

No case has been called to our attention directly in point upon the facts here presented, but in support generally of the conclusions reached see the following: Bank v. Bank, 12 Tex. Civ. App. 318, 34 S. W. 458; Sahlien v. Bank, 90 Tenn. 221, 16 S. W. 373; Givan v. Bank (Tenn. Ch.) 52 S. W. 923, 47 L. R. A. 270; Bank v. Huggins, 3 Ala. 206; Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722.

Finding no error, the judgment is affirmed.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.