No. 23,324.

THE NORTHWESTERN NATIONAL BANK, of Minneapolis, Minn., *Appellant*, v. THE PEOPLES STATE BANK, of Courtland, Kan., *Appellee*.

SYLLABUS BY THE COURT.

BANKS—*Failure to Collect Draft Accompanying Bill of Lading—Measure of Damages.* The seller of certain cars of potatoes drew sight drafts on the purchaser in favor of the plaintiff bank and attached them to the bills of lading with instructions to deliver on payment of drafts only. The plaintiff bank sent the bills with drafts attached to the defendant bank which bank delivered the bills of lading without collecting the drafts. In a suit for damages against such bank for failure to follow instructions, *held*, that actual damages only can be recovered—in this case nothing, as the plaintiff received all that the potatoes brought and were actually worth.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed July 9, 1921. Affirmed.

*N. J. Ward*, of Belleville, for the appellant.

*Park B. Pulsifer, Charles L. Hunt*, and *Clyde L. Short*, all of Concordia, for the appellee.

The opinion of the court was delivered by

WEST, J.: W. H. Ferrell & Company of Minneapolis, Minn., sold three shipments of potatoes to R. Cameron of Courtland, Kan., consigning two of them, shipper's order, to W. H. Ferrell & Company at Mankato, Kan., and one, shipper's order, to Phillipsburg, notify H. C. Bickford. With each shipment was a sight draft, drawn by W. H. Ferrell & Company on R. Cameron in favor of the plaintiff, attached to the bill of lading and

indorsed in blank by W. H. Ferrell & Company, with written instructions—"Deliver documents on payment of draft only. . . . Return at once if not accepted or paid. . . . Telegraph non-payment of drafts of $500 or over," signed by the plaintiff bank. These were sent to the defendant for collection. The cashier of the defendant bank detached the bills of lading and delivered them to Cameron without collecting any money on the drafts. Cameron obtained possession of the potatoes which he claims were not up to the quality agreed upon. He procured a reduction on the two cars sold to one customer and took over the other car and retailed it out, receiving altogether from the three cars $814.41 less than their cost.

The plaintiff sued, alleging in substance that the defendant bank failed to follow instructions, and asked for damages in the sum of $814.41, with interest, alleging that if the defendant made any reduction to Cameron it was without the knowledge or authority of the plaintiff, and averring that the defendant undertook to handle and collect the draft in accordance with instructions given, and that the plaintiff was the owner and holder of the drafts.

The amended answer, after a general denial, admitted receiving the drafts for collection and remittance, alleged that the potatoes were of inferior quality and that the shippers authorized Cameron to make reasonable allowance to the customers to whom he had sold some of them, that the potatoes were sold for all that they were, in fact, worth, and that the shipper and buyer had settled for the loss, and had done so at the suggestion of the plaintiff who accepted and approved and ratified the settlement.

The jury found for the defendant and in answer to special questions found that the settlement between Ferrell and Cameron included the shortage on the draft.

The plaintiff appeals and insists that, being the owner of the drafts and having turned them over to the defendant bank for collection, and the latter having failed to follow the written instructions, the plaintiff is entitled to recover the difference between the face of the drafts and the amount realized from the sale of the potatoes.

The defendant's theory is that the drafts were unaccepted; that the plaintiff has received all that the potatoes, for which

the drafts were drawn, were worth; that the shortage was settled for with the consent of the plaintiff and with its approval; and that the court correctly charged the measure of damages to be the real loss suffered by the default of the defendant bank, in other words, that the action is really for the conversion of personal property and the recovery limited to the value thereof.

Ordinarily, when a bank undertakes to make a·collection for a customer it must follow instructions, and can depart therefrom only at its peril. This rule is fully conceded by the defendant's counsel who ask, "What, then, is the measure of damages for our having so departed?" and answer—the actual loss sustained.

Our attention has been called to no decision in this state bearing directly on this point, although numerous cases involving the collection of bills of lading and collections of negotiable paper by one bank for another have been before us. ·In 2 Michie on Banks and Banking, 1517, the rule is thus stated:

"The damages which the· holder of a bill, note or draft, is entitled to recover of a bank guilty of negligence of default as a collecting agent, is the actual loss occasioned· by such negligence or default. While the face of the bill, note, or draft is, *prima facie*, the measure of the damage which the party interested therein has sustained, yet the collecting bank may, notwithstanding its default or breach of duty, show the actual damage which has been sustained by the interested party, or may show that no damage has been actually suffered by him in defense of such action brought against it."

In 7 Corpus Juris, 623, it is said:

"Where a bank which has undertaken the collection of a bill or note has been guilty of negligence in the performance of its duties, the damages which the depositor is entitled to recover are measured by the actual loss occasioned by the improper conduct of the bank. While the amount of the bill or note placed in the hands of the bank is *prima facie* the measure of its liability, defendant may mitigate the damages by showing either the solvency of the maker or acceptor, the insolvency of the indorser, that the paper was partially or wholly secured, or that any other fact existed which would lessen the actual loss to plaintiff, and if it appears that the depositor has not been injured, nothing can be recovered beyond nominal damages."

In support of this text, authorities are cited from Alabama, Arkansas, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New York, North

Carolina, North Dakota, Oklahoma, Pennsylvania, Tennessee, Texas, West Virginia, The Supreme Court of the United States, and England.

"It is a fundamental principle that negligence on the part of an agent in the transaction of the business of his principal will not render him liable for damages unless his negligence results in an actual injury to his principal. And as a corrollary the damages recoverable by a principal for the negligence of his agent are the actual loss which the principal has suffered. So it would seem to follow that a recovery for the negligence of a collecting bank resulting in a failure to make the collection should be limited to the actual loss suffered by its customer." (3 R. C. L. 631.)

In a note, 1 L. R. A., n. s., 246, Judge Story is quoted to the effect that although negligence may be wrong, yet if it is without damage it will not avail, for, "to maintain an action, both must concur." In *Jefferson County Savings Bank v. J. C. Hendrix,* 147 Ala. 670, an action for failure to present a check deposited for collection and to give notice of its dishonor, the court said:

"But the damages recoverable are by no means necessarily the amount of the check, . . . It will, therefore, not suffice for the owner to hale the collector bank into court and implead that 'you took this check to collect it, you did not do your duty in that regard and of consequence the check was not collected, therefore, the check is yours, and the amount of it in money is mine and in your hands for me, and you must pay me that amount.' . . . The mere failure of collection of the check does not demonstrate the loss to the owner of the demand for which it was given, or any part of such demand. The owner should say to the bank: 'You took this check for collection. Certain duties were thereby devolved upon you . . . You failed to perform those duties . . . Because of its nonpayment I have suffered damages in the sum of so many dollars. For *these damages* you are liable to me, and must account in this action.'" (pp. 675, 676.)

To a similar effect is *First National Bank of Decatur v. Henry,* 159 Ala. 367, wherein the court quoted with approval from 1 Daniel on Negotiable Instruments, § 329, that the measure of damages is the actual loss suffered. In *Second Nat. Bank v. Bank of Alma,* 99 Ark. 386, it was held that—

"A collecting bank which wrongfully surrenders a bill of lading attached to a draft is liable only for the actual loss which results from such unauthorized act." (Syl. ¶-2.)

(See, also, *Chapman v. McCrea et al.,* 63 Ind. 360; *The Farmers' Bank and Trust Co. of Stanford v. Newland,* 97 Ky. 464; *Lord v. Hingham National Bank,* 186 Mass. 161.)

In *First Nat. Bank v. Fourth Nat. Bank,* 77 N. Y. 320, the court, among other things, said:

"When the agent so deals with the draft as to secure and preserve to his principal all his rights and remedies against the prior parties to the bill, he is liable only for the actual or probable damages which his principal has sustained, in consequence of his negligence; . . . In all these cases, the negligence of the agent being established, it is a question of damages, and the agent may show notwithstanding his fault, that his principal has suffered no damages; and the recovery can then be for nominal damages only. He may show, in reduction of the damages, that if he had used the greatest diligence, the bill would not have been accepted or paid, or that his principal holds collaterals, or has an effectual remedy against the prior parties to the bill." (p. 329.)

To the same general effect is *First Nat'l Bank v. Fourth Nat'l Bank,* 89 N. Y. 412. In *National Bank v. Brogden & Bryan,* 98 Tex. 360, the bank received from the shipper of a carload of apples a draft on the consignee for the purchase price with the bill of lading attached, and without surrendering the draft, took from the consignee a draft for the price, on third parties, and delivered the bill of lading to him. The third parties refused payment, and it was held that the bank was liable to the shipper, but that the measure of damages was not the amount of the draft, but the value of the apples at their destination, less freight charges. In *Van Wart v. Woolley,* 3 B. & C. Rep. (Eng.) 439, the action was for damages for failure to give due notice of the nonacceptance of a bill of exchange. Abbott, C. J., said:

"The plaintiff is, therefore, entitled to maintain his action against them, to the extent of any damage he may have sustained by their neglect. . . . If, as between the plaintiff and Irwing & Co., he has made the bill his own, and cannot call upon them for the amount, his damage will be to the full amount for which the verdict has been taken. If he still retains a remedy against them, and has only been delayed in the pursuit of such remedy as he might have had against the drawer, a bankrupt, the amount of his loss has not been inquired into or ascertained, and is probably much less than the amount of the bill." (p. 444.)

Towards the close of the opinion it was said:

"In the present case it does not appear that Irwing & Co., have sustained any damage by the want of notice of the nonacceptance of the bill. Cranston, the drawer, was not entitled to such notice; he had no right to draw, and he sustained no prejudice. He had become bankrupt some weeks before notice of the non-acceptance could have reached Irwing and Co.; nothing appears to show that they have lost any remedy that they

might have had either against him or his estate, if they could ever have had any; but even this does not appear affirmatively; the circumstances under which they received the bill not being disclosed; and possibly they may have received it upon the terms of being accountable only in case it should be accepted, and not otherwise." (p. 448.)

It was therefore ordered that the case be again submitted to a jury to ascertain the amount of this loss unless the parties could agree thereon.

There is a feeling that negotiable paper entrusted to a bank for collection should be so handled that its face value may be forthcoming in order that the commercial world may not be disturbed by failure to treat such paper with the sacredness it deserves, and it is doubtless true that a bank collecting commercial paper, or a bank entrusted with the commission to handle other valuable securities must use due diligence in the performance of its duties. But it would be a harsh rule which would require a bank in all instances to account for the face value on all paper entrusted to it.

The general doctrine is that one who has suffered damages by the negligence of another may recover such damages and no more; and we know of no rule of the law merchant applicable to bills of lading with drafts attached, constituting an exception to this general rule. Certainly the authorities cited and referred to seem overwhelmingly to bear out such general rule rather than to sustain the claimed exception thereto.

Concluding, as we are compelled to do, therefore, both upon principle and upon authority, that the trial court adopted the correct measure of damages, its judgment is affirmed.