**FIRST NAT. BANK OF AMARILLO et al. v. SLATON INDEPENDENT SCHOOL DIST. et al.**

No. 3962.

Court of Civil Appeals of Texas. Amarillo.
Feb. 22, 1933.

Rehearing Denied March 29, 1933.

Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellant First Nat. Bank of Amarillo.

John W. Goodwin and Joe T. Goodwin, both of Austin, for appellant Shaw.

R. A. Baldwin, of Slaton, and Bledsoe, Crenshaw & Dupree, of Lubbock, for appellee Slaton Independent School Dist.

Wilson, Randal & Kilpatrick, of Lubbock, for appellee First Nat. Bank of Lubbock.

JACKSON, Justice.

On March 3, 1932, the Slaton independent school district. instituted cause No. 5055 in the district court of Lubbock county against the defendants James Shaw, banking commissioner of Texas, the First State Bank of Slaton, Tex., and the First National Bank of Amarillo, Tex., to recover $6,130.80, alleged to be school funds due the plaintiff by the defendants.

On March 14, 1932, the plaintiff instituted cause No. 5076 in the same court against said banking commissioner, the First State Bank of Slaton, and the First National Bank of Lubbock, Tex., to recover the same sum.

The First National Bank of Amarillo in cause No. 5055 in due time and form filed its plea of privilege, and the plaintiff seasonably filed its controverting affidavit.

Subject to the plea of privilege, the First National Bank of Amarillo answered, and among other things alleged the pendency of cause No. 5076, and that the pleadings therein revealed that the First National Bank of Lubbock, Tex., was a necessary party in cause No. 5055.

On April 21, 1932, the court, on its own motion, consolidated the two causes, .and ordered all parties to replead.

The plaintiff repleaded, and alleged:

That on December 18, 1931, it was without an official depository, and had outstanding bonds against it payable at and to the Central-Hanover National Bank & Trust Company, New York City, hereafter called the Hanover Bank. That plaintiff had certain tax money which constituted the sinking fund with which to pay said bonds as they matured and the interest as it accrued. It advised the First State Bank of Slaton, hereafter called the Slaton Bank, thereof, and of the necessity of sending the required funds to the Hanover Bank, and sought information relative to a safe and economical transmission thereof. The Slaton Bank advised plaintiff that the First National Bank of Amarillo, hereafter called the Amarillo Bank, had a correspondent bank in New York City and was the correspondent of the Slaton Bank. That the money could be deposited with it in a special account, designated "sinking fund," and, when directed by plaintiff, transmitted to the Amarillo Bank and by it in the regular course of business sent to the ·Hanover Bank. The plaintiff and the Slaton Bank agreed that the tax money would be so deposited and transmitted to the Hanover Bank to pay such bonds and interest, and, relying on such agreement, plaintiff placed in the Slaton Bank a special deposit designated "sinking fund" aggregating the sum of $7,363.88.

That on December 18, 1931, under and by virtue of such arrangements, $1,233.08 was transferred to the Hanover Bank.

That on the 9th day of January, 1932, the plaintiff drew its check against said funds for the sum of $3,127.80 and the Slaton Bank drew its draft for a like amount on and forwarded it to the Amarillo Bank, with instructions to transmit said amount by. wire to the Hanover Bank. That on January 18th thereafter the plaintiff drew its check for $3,003 against said fund, and the Slaton Bank drew its draft for the same amount on and forwarded it to the Amarillo Bank, with instructions to transmit said sum by wire to the Hanover Bank. That said checks were received by the Amarillo Bank on January 11, 1932, and January 19, 1932, respectively, on which dates and at various times thereafter the Amarillo Bank had on hand ample funds of the Slaton Bank to pay said drafts.

That it had long been the practice and custom of the Amarillo Bank to pay drafts drawn on it by the Slaton Bank, even though such payment created an overdraft. That said banks had entered into a contract by the terms of which collateral securities of the Slaton Bank had been pledged to protect the Amarillo Bank from loss if it permitted the Slaton Bank to overdraw its account, and it was the legal and contractual duty of the Amarillo Bank on receipt of such drafts to honor them and remit the moneys to the Hanover Bank. That the Amarillo Bank failed to wire the amount of such drafts to the Hanover Bank, failed to return such drafts to the Slaton Bank until after it closed on January 28, 1932, and failed to notify the Slaton Bank or plaintiff that it would not honor such drafts.

That, if plaintiff is mistaken in its allegations that the Amarillo Bank had ample funds of the Slaton Bank to pay the drafts,

or that it was under contractual obligations to pay such drafts, then it became the duty of the Amarillo Bank to promptly return the drafts either to plaintiff or the Slaton Bank or give notice of its refusal to pay. This it wholly failed to do, and such conduct was negligence, and as a proximate result thereof plaintiff was damaged in the sum of $6,130.80, together with interest.

The plaintiff alleged:

That the Slaton Bank was guilty of negligence in failing, after a reasonable time and receiving no notice from the Amarillo Bank that the drafts were not paid and the money remitted to the Hanover Bank, to make inquiry and ascertain such facts. That, had it done so prior to closing its doors, plaintiff could have withdrawn its funds from the Slaton Bank and selected other channels to transfer the money to the Hanover Bank, and that such negligence resulted in plaintiff's loss.

That the sinking fund deposited by plaintiff in a special account to the Slaton Bank, with the exception of the sum of $1,233.08, remained in the control of said bank and when it failed on January 28th it still held such money as a trust fund, which is now in the possession of the banking commissioner as liquidating agent. That the title to said money did not pass to the banking commissioner, but remained a trust fund in his hands, and plaintiff is entitled to a first and preference claim against such assets of the insolvent Slaton Bank for the payment of such funds. That the commissioner received and has assets of the Slaton Bank in the approximate sum of $20,000, which includes the $6,130.80 belonging to plaintiff.

The plaintiff also alleged that on January 25, 1932, the Slaton Bank learned that the Amarillo Bank had not paid the two drafts and remitted the money to the Hanover Bank, but gave plaintiff no notice thereof; that on said date the Slaton Bank had funds on deposit with its correspondent, the First National Bank of Lubbock, hereafter called the Lubbock Bank, and made a contract with said bank by the terms of which it was agreed that said Lubbock Bank would by wire transmit the sum of $6,130.80 to the Hanover Bank to pay plaintiff's maturing bonds and the accrued interest; that in compliance with said agreement, on the afternoon of January 25th, the Lubbock Bank by wire instructed its New York correspondent to pay said sum to the Hanover Bank, but on January 26th the Lubbock Bank canceled said instructions and failed to notify the Slaton Bank or plaintiff thereof; that the Slaton Bank continued to transact its banking business in the usual manner during January 25th, 26th and 27th, and, had the Lubbock Bank in a reasonable time notified the Slaton Bank or the plaintiff that the instructions to pay had been countermanded, plaintiff could and would have protected itself before the Slaton Bank closed

and ceased to function; that such conduct of the Lubbock Bank was negligence, and was the proximate cause of plaintiff's loss of $6,130.80.

The plaintiff further alleged:

That, by the contract between the Lubbock Bank and the Slaton Bank and the facts and circumstances pertaining to such transaction, a trust fund was created in the Lubbock Bank for the benefit of plaintiff, or, in any event, the Slaton Bank equitably assigned $6,130.80 of its funds in the Lubbock Bank to the Hanover Bank to pay plaintiff's debt evidenced by the matured bonds and interest. That no part of said money was ever paid to the Hanover Bank by the Lubbock Bank, and plaintiff was placed in default and compelled to pay the Hanover Bank said sum with other money. That plaintiff thereby became subrogated to the rights of the Hanover Bank to said $6,130.80.

That the Lubbock Bank has $6,323.60 realized from the funds assigned by the Slaton Bank to the Hanover Bank, and plaintiff has a preference right to $6,130.80 thereof by virtue of said assignment and the trust fund character of said sum, of all of which the Lubbock Bank and the banking commissioner had notice.

Subject to its plea of privilege, the defendant Amarillo Bank answered in the consolidated case by general demurrer, general denial, and pleaded:

That at no time alleged did such defendant have sufficient funds belonging to the Slaton Bank to pay the two drafts drawn upon it, or either of them, and there was no contract binding such defendant to pay overdrafts drawn on it by the Slaton Bank. That the Slaton Bank had pledged certain bills receivable, aggregating several thousand dollars, to secure the payment of an indebtedness owing said defendant by the Slaton Bank, but such security was inadequate to protect it, as the Slaton Bank was, when it closed, and yet is, indebted to the defendant Amarillo Bank many thousands of dollars, and, if all the collateral pledged with this defendant as security be collected, said defendant would sustain a loss of several thousand dollars.

That the deposits made by the plaintiff in the Slaton Bank under the circumstances alleged were trust funds and plaintiff has sustained no loss. That defendant Amarillo Bank, on and prior to January 19th, notified the Slaton Bank that said two drafts would not be paid unless sufficient funds were furnished to cover the requested remittances. That thereafter the Slaton Bank abandoned all claims against said defendant, and arranged with the Lubbock Bank to transmit the amount of said drafts to the Hanover Bank, and assigned and deposited with the Lubbock Bank sufficient funds for the specific purpose of covering the $6,130.80, and

the Lubbock Bank has said funds and is ready and able to pay to plaintiff the amount of said drafts on order of the court. That, if defendant Amarillo Bank was negligent in any particular, which it denies, it could in no event be held for any loss to plaintiff that was not the proximate result of its negligence.

The Slaton Bank answered by general demurrer and general denial.

The Lubbock Bank answered by general demurrer, general denial, denied all negligence relative to the transaction between it and the Slaton Bank, but alleged that said defendant had and held the sum of $6,323.60 to the credit of the Slaton Bank, and that the banking commissioner and the school district were both claiming said sum, which amount said defendant tendered in cash into court and asked that it be allowed an attorney fee in the sum of $1,000.

The defendant banking commissioner answered by general demurrer and general denial that the arrangement between the plaintiff and the Slaton Bank constituted the Amarillo Bank plaintiff's agent to transfer the funds to the Hanover Bank in payment of its bonds and interest, and that the Slaton Bank, having complied with such arrangement, was relieved of further liability. That the funds in the Lubbock Bank to the credit of the Slaton Bank represent collections made for the Slaton Bank, and such funds cannot be applied to plaintiff's damages, if any it has sustained, by reason of the failure of the Lubbock Bank to transmit said sum to the Hanover Bank.

During the trial the plaintiff dismissed its suit based on the alleged negligence and breach of contract of the Lubbock Bank.

In response to special issues submitted by the court pertaining to the controversy between the banking commissioner and the plaintiff relative to the funds deposited in court by the Lubbock Bank, the jury found, in effect, that it was the intention of the Slaton Bank to create a fund in the Lubbock Bank to be used for the specific purpose of paying the bonded indebtedness of plaintiff to the Hanover Bank; that, when the Lubbock Bank agreed to wire $6,130.80 to the Hanover Bank, it relied on the Slaton Bank to place funds with it to pay such debt; that the Slaton Bank did place sufficient funds with the Lubbock Bank for such purpose; that the officer representing the Lubbock Bank was authorized to make such contract and agreement in behalf of the Lubbock Bank; that such arrangements were afterwards approved by the Lubbock Bank; that the Lubbock Bank agreed with the Hanover Bank to remit the moneys to New York to pay the Hanover Bank.

The court rendered judgment in favor of the Lubbock Bank, and awarded it the sum of $250 as attorney's fees, deducting said amount from the $6,323.60 tendered into court by the Lubbock Bank. He adjudged that the balance of said sum, $6,073.60, be paid to the plaintiff and the claim of the banking commissioner thereto be denied.

From this judgment the appellant, banking commissioner, appealed, and challenges as error the action of the trial court in failing to sustain his general demurrer and in refusing to direct a verdict in his behalf, asserting that the testimony is insufficient to support the findings of the jury on the above issues.

The pleadings were not subject to the commissioner's general demurrer. The statement of facts consists of more than 450 pages, all of which we have carefully read, and in our opinion the testimony is amply sufficient to warrant the submission of the above issues to the jury and support their findings thereon.

The appellant commissioner also asserts that the transactions between the Slaton Bank and the Lubbock Bank did not impress the funds tendered into court by the Lubbock Bank with a trust in behalf of the plaintiff, nor constitute an assignment of such funds to the Hanover Bank for the payment of the bonds and interest due it by the Slaton independent school district.

It is conceded that the money deposited by the plaintiff in the Slaton Bank was tax money placed in a special account and designated "sinking fund" to be used for the purpose only of discharging plaintiff's obligations on its matured bonds and accrued interest to the Hanover Bank. That this constituted a trust fund in the Slaton Bank is not controverted.

The transactions between the Slaton Bank and the Lubbock Bank are fully revealed by the findings of the jury, and it is admitted that the Lubbock Bank, with full knowledge of the purpose for which said fund was created, would have transferred the money to the Hanover Bank in payment of plaintiff's debt had the banking commissioner not forbade such transmission.

"It is generally held that, money or property being delivered by one person to another for a specific purpose, such as leaving money by one with another to be deposited in a bank or placed at interest (Allen v. Pollard, 109 Tex. 536, 212 S. W. 468), or to pay the indebtedness of the former to a third party, the person accepting the money becomes a trustee, and such a transaction created a trust (McKee v. Lamon, 159 U. S. 317, 16 S. Ct. 11, 40 L. Ed. 165; People v. City Bank of Rochester, 96 N. Y. 32; Hall v. Marston, 17 Mass. 575; Bearce v. Fahrnow, 109 Mich. 315, 67 N. W. 318)." Sharon Grain Co. v. Farmers' National Bank (Tex. Civ. App.) 277 S. W. 449, 451.

This holding is approved by the Texarkana

Court of Civil Appeals in Shaw, Banking Commissioner, v. Lamar County, 4 S.W.(2d) 608, in which writ of error was refused.

Under these decisions and the authorities therein cited, we are inclined to hold that the facts and circumstances disclose that the money deposited in court by the Lubbock Bank constituted a trust fund which was properly applied upon the payment of plaintiff's debt.

However, if the funds were not held by the Lubbock Bank in trust for the benefit of the Slaton independent school district, the appellee herein, such fund had been assigned in due course to the Hanover Bank for a specific purpose—the payment of the matured bonds and accrued interest due by said school district to said bank. It is conceded that said funds were never transmitted to the Hanover Bank, but that said bank was paid by the school district out of other moneys. There is no contention that the school district was not subrogated to the rights of the Hanover Bank.

Chief Justice Hickman, in First State Bank & Trust Co. et al. v. First Bank of Truscott (Tex. Civ. App.) 32 S.W.(2d) 494, 496, in which a writ of error was denied, says:

"Article 5940, § 127, R. S. 1925, provides: 'A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same.'

"It has been correctly held that this provision of the statute does not render it incompetent for parties to create an assignment by agreement. The bill as such does not have that effect, but the right of contract is not limited by the statutory provision. Hatley v. West Texas National Bank (Tex. Com. App.) 284 S. W. 540.

"The fund having been dedicated to a specific purpose, the First National Bank had no right to apply same upon the unpaid indebtedness of Driver. Cotulla State Bank v. Herron (Tex. Civ. App.) 191 S. W. 154; Hatley v. West Texas National Bank, supra; First National Bank v. Price (Tex. Civ. App.) 262 S. W. 797; Harris County v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; 7 C. J. 660.

"In Northern Sugar Corporation v. Thompson (C. C. A.) 13 F.(2d) 829, 832, this statement of the rule is deduced: 'Where the depositor, at the time a deposit is made, enters into an understanding and agreement with the bank that the money deposited is for a specific purpose, and for that alone, as funds deposited to pay a particular note, draft, or check, such deposit partakes of the nature of a special deposit, the relation between the depositor and the bank is that of

principal and agent, and the title to the deposit remains in the depositor.' "

For additional authorities, see, Slaughter v. Bank of Texline et al. (Tex. Civ. App.) 164 S. W. 27; C. W. Hahl & Co. v. Hutcheson, Campbell & Hutcheson (Tex. Civ. App.) 196 S. W. 262; Slaughter v. First National Bank of Lamesa et al. (Tex. Civ. App.) 18 S.W.(2d) 754.

"It is not essential that a fund assigned by an order should have an actual existence at the time the order is drawn, but it is sufficient if it exists potentially." 5 C. J. 924, § 85.

"The fund need not be actually in being, if it exists potentially—that is, if it will in due course of things arise from a contract or arrangement already made or entered into when the order is given—the order will operate as an equitable assignment of such fund as soon as it is acquired and will create an interest in it which a court of equity will enforce." 3 Pomeroy's Equity Jurisprudence (4th Ed.) § 1283.

The holdings of the Texas courts are in conformity with this rule. Bush et al. v. Gholson et al. (Tex. Civ. App.) 273 S. W. 703; Youngberg v. El Paso Brick Co. (Tex. Civ. App.) 155 S. W. 715.

The judgment rendered against the banking commissioner is affirmed.

In response to special issues submitted by the court pertaining to the controversy between the Slaton independent school district and the Amarillo Bank, the jury found, in substance, that the Amarillo Bank was guilty of negligence in failing to pay each of the drafts when received, and such negligence was the proximate cause of plaintiff's loss; that it failed to return the drafts within a reasonable time, and such failure was negligence and the proximate cause of plaintiff's damages; that the Amarillo Bank, when it received the drafts, knew it was handling them for the Slaton district; that the Amarillo Bank, acting through its president, W. H. Fuqua, agreed with J. H. Brewer, president of the Slaton Bank, that the Amarillo Bank would pay drafts drawn upon it by the Slaton Bank, whether or not said bank had sufficient cash in the Amarillo Bank to pay such drafts.

The court overruled the plea of privilege urged by the Amarillo Bank at the conclusion of the testimony, and on these findings rendered judgment against the Amarillo Bank for the sum of $6,130.80, with interest at the rate of 6 per cent. per annum on the amount of each draft from the date of the receipt thereof, from which judgment the Amarillo Bank appealed.

The assignment of appellant Amarillo Bank contending that the court erred in overruling its plea of privilege is not tenable.

Mercantile Bank & Trust Co. et al. v. Schuhart et al. (Tex. Civ. App.) 277 S. W. 1087; Id., 115 Tex. 114, 277 S. W. 621; Gilmer v. Graham (Tex. Com. App.) 52 S.W.(2d) 263.

The testimony discloses without contradiction that the Slaton Bank was guilty of actionable negligence, and it will be noted that the Amarillo Bank alleged that the Lubbock Bank was a necessary party in cause No. 5055. The Slaton Bank and the Lubbock Bank both have their principal place of business situated in Lubbock county.

The contention of this appellant that the judgment of the court is erroneous in that it decrees the appellee a full recovery for its loss against each of the two defendants only requires a reformation of the judgment against the Amarillo Bank. The judgment expressly provides that any sum paid by either of the defendants on the judgment shall to that extent satisfy the judgment against the other defendant. Labor Bank & Trust Co. v. Adams (Tex. Civ. App.) 23 S.W.(2d) 814.

We deem it unnecessary to discuss separately each of the assignments of error urged by the appellant Amarillo Bank.

The record discloses that the Slaton Bank had borrowed about $40,000 from the Amarillo Bank, and in a written contract pledged certain collateral to secure this appellant in the payment of said loan. This contract does not obligate this appellant to pay overdrafts drawn on it by the Slaton Bank, but provides, in effect, that such collateral shall be security if this appellant should pay any overdraft drawn on it by the Slaton Bank. While the jury found in effect that the Amarillo Bank, acting through its president, had agreed to pay overdrafts drawn on it by the Slaton Bank, such finding, if supported by the evidence, would not be binding on this appellant.

"The President, unless specially empowered, cannot enter into contracts or agreements on behalf of a corporation. Authority so to do may, however, be conferred on him by the charter, by vote of the board of directors, or by the existence of such facts as constitute a public holding out and warrant the public in believing that the undertaking is within the scope of his legitimate delegated authority." 1 Morse on Banks & Banking (6th Ed.) p. 381.

"Where it is sought to hold the bank liable, either facts must be pleaded and proved from which it may be concluded that the officer had apparent authority or express authority must be alleged and shown. The burden of proof is upon him who alleges authority; in the absence of proof no presumption of authority will be indulged." 6 Tex. Jur. 205.

The appellee sought to hold the bank by virtue of the authority inherent in W. H. Fuqua because of his official position. It neither pleaded nor proved that he had apparent authority or express authority to bind the bank by such agreement.

If such agreement had been made with the authority of the bank directors, under the facts disclosed by this record it would have been illegal.

"A corporation, organized and engaged in the banking business, whether under the National Bank Act [see 12 USCA § 21 et seq.] or under the laws of the State, can assume no liability without acquiring assets to offset the same. The interests not only of depositors and stockholders, but also of the public can be safeguarded only by a rigid and consistent enforcement of this salutary rule. It has been held by this court, both upon principle and upon uniform authority to that effect, that a banking corporation cannot lend its credit to another by becoming surety, indorser or guarantor for him." People's National Bank of Winston-Salem v. Southern States Finance Co. et al., 192 N. C. 69, 133 S. E. 415, 419, 48 A. L. R. 519. See, also, Merchants' Bank of Valdosta v. Lyman D. Baird (C. C. A.) 160 F. 642, 17 L. R. A. (N. S.) 526.

The appellee alleged that on January 11, 1932, and January 19, 1932, respectively, the dates on which the drafts were received, the appellant bank had on hand ample funds of the Slaton Bank to pay said drafts. It was incumbent upon appellee not only to allege such fact, but to substantiate it by proof and secure a finding of the jury thereon. First State Bank of Hughes Springs v. Sanford et al. (Tex. Civ. App.) 255 S. W. 644; International-Great Northern Railway Co. v. Casey (Tex. Com. App.) 46 S.W.(2d) 669. The payment of other items for the Slaton Bank which resulted in an increase of its overdraft with this appellant would not change this rule. The testimony shows without contradiction that the Slaton Bank did not at any of the material dates have funds with this appellant for paying either of said drafts; and that, if the Amarillo Bank realizes the full amount on the securities pledged, it will sustain a loss of approximately $24,000.

The finding that the Amarillo Bank knew that the drafts were for appellee's benefit is sustained by the testimony, and therefore said bank became the agent of the school district. Tilman County Bank of Grandfield, Okl., v. Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302; Garver et al. v. Howard, 113 Tex. 371, 257 S. W. 209.

The testimony is conclusive that no notice was given appellee of the failure of this appellant to present or pay the drafts until February 2, 1932. This constituted negligence, for which the Amarillo Bank was liable, only for such damages as were sustained by appellee as the proximate result of such

negligence. Citizens' National Bank of Waxahachie v. First National Bank of Gorman (Tex. Civ. App.) 260 S. W. 219; Jefferson County Savings Bank v. John C. Hendrix, 147 Ala. 670, 39 So. 295, 1 L. R. A. (N. S.) 246; Northwestern National Bank v. People's State Bank, 109 Kan. 506, 200 P. 278, 19 A. L. R. 551.

The Lubbock Bank was allowed to retain out of the $6,323.60 which it tendered into court the sum of $250 for attorney's fees, thereby reducing the $6,130.80 assigned to the Hanover Bank for the payment of appellee's bonds and interest to the sum of $6,073.60.

Neither the appellee nor the banking commissioner complains of the payment of the attorney fee out of the moneys tendered into court, and this appellant cannot be held therefor.

"Unless provided for by statute, or by contract between the parties, the attorneys' fees incurred by a party to litigation are not recoverable against his adversary, either in an action in tort or a suit upon a contract, except by way of punitive damages upon allegations of fraud, imposition, or malicious conduct. 13 Tex. Jur. § 101, p. 197; Houston Production Co. v. Taylor (Tex. Civ. App.) 33 S.W.(2d) 202 (writ refused)." Mathis v. Wherry (Tex. Civ. App.) 45 S.W.(2d) 700, 702.

The Amarillo Bank is liable for the interest at the rate of 6 per cent. per annum from January 11, 1932, on the amount of the first draft, and for interest at 6 per cent. per annum from January 19, 1932, on the second draft.

"It is now the settled law of Texas that where damages, whether described as arising ex contractu or ex delicto, are established as of a definite time, and the amount is determined by fixed rules of evidence and known standards of value, interest is recoverable from the date of the accrual of the cause of action as compensation for the detention of the sum thus due." 13 Tex. Jur. 253, § 142.

The judgment against this appellant is reformed so as to limit appellee's recovery to interest as above stated, and as so reformed is affirmed.