SCHOOLER MOTOR COMPANY, INC., Appellant, v. BANKERS TRUST COMPANY et al., Appellees.

No. 41799.

April 4, 1933.

Rehearing Denied November 17, 1933.

Walter L. Stewart, for appellant.

Gamble, Read & Howland, for Bankers Trust Co.

Addison & Smedal, for State Bank of Maxwell.

Kintzinger, J.—Appellant in its petition claims that during the early part of February, 1931, it deposited with the defendant Bankers Trust Company, within a few days of each other, four separate checks executed by one Tipton, an automobile dealer at Maxwell and Nevada, Iowa, payable to plaintiff. The checks were immediately sent to the Maxwell State Bank for collection. Within a few days after such deposit the checks were returned unpaid. Immediately thereafter, the plaintiff again requested the defendant Bankers Trust Company to return the checks to the Maxwell Bank for collection; that all of said checks were again forwarded to the State Bank of Maxwell for collection, and the plaintiff was given credit therefor on its deposit account with the Bankers Trust; in forwarding said checks the following instructions were sent in writing:

"Instructions: Surrender documents attached on payment only. Protest all items over $10 unless marked with this stamp or similar stamp of preceding endorser. Wire nonpayment of items of $500 or over."

The checks were all returned to the State Bank of Maxwell on or about the 12th day of February, 1931.

That plaintiff was not advised of their nonpayment until on or about the 23d of March, 1931.

Plaintiff claims that if the defendant banks had given plaintiff notice of nonpayment within a reasonable time after their receipt by the State Bank of Maxwell, plaintiff would have been able to have obtained payment or sufficient security to cover the checks and would have been without loss; that on account of the negligence of the defendants in failing so to do, plaintiff has been damaged in the sum of $3,432.50.

Defendants deny negligence, and deny that plaintiff has sustained any injury or damage by reason of their failure to notify plaintiff of nonpayment.

 Appellant claims in argument that an issue of "accounts stated", is presented in the pleadings because of bank statements issued to plaintiff by the Bankers Trust, March 1st and April 1st giving plaintiff credit for said checks. An examination of the petition, however, fails to show that any claim is made on an "account stated". The sole cause of action alleged in plaintiff's petition is for damages sustained by reason of defendant's negligence in failing to give timely notice of the nonpayment of said checks after their receipt by the State Bank of Maxwell.

At the close of all the evidence, the defendants moved for a directed verdict because: first, No negligence was established against either of the defendants, and, second, that if any negligence was established, no injury or damage has resulted therefrom.

The motion for a directed verdict was overruled, but in ruling thereon the court found and held as a matter of law that both of the defendants were negligent; that plaintiff was entitled to nominal damages only, and thereupon directed a verdict against both defendants for $1.00 and costs.

The law of the case on the question of negligence is settled by the court's ruling thereon, no appeal having been taken therefrom by the defendants. That question is therefore eliminated.

The only question in the case is whether or not there was sufficient evidence to go to the jury on the question of damages.

The facts are substantially as follows:

Mr. Tipton, maker of the checks, was an automobile dealer residing at Nevada and Maxwell, Iowa. Between January 31 and February 11, 1931, he purchased four automobiles from the plaintiff company at Des Moines, giving his four checks therefor, substantially as follows, except as to amount:

"Maxwell, Iowa January 31, 1931
 "State Bank of Maxwell
 "Pay to order of Schooler Motor Co. ............................. Dollars.
 "[Signed] Ralph N. Tipton."

The first check was issued on January 31st for $710, the second on February 2, 1931, for $667.90, the third on February 9, 1931, for $664, and the fourth on February 11, 1931, for $1,400.50. The checks of February 2d and February 9th also contained the following:

"For value received, I represent that the above amount is on deposit in said bank subject to this check and is hereby assigned to payee, and I guarantee payment with exchange and costs in collecting.
"Pontiac Sedan Dld. Ralph N. Tipton."

When these deposits were made in the Bankers Trust Company, the plaintiff was given credit therefor upon its checking account.

A few days after sending these checks to the Maxwell Bank they were returned to the Bankers Trust unpaid, and the plaintiff so notified. One of plaintiff's agents immediately went to Maxwell, Iowa, to learn why they were not paid. He claims to have been advised by the cashier of the Maxwell Bank that the checks would be paid if returned; that Tipton agreed to take them up. Thereupon the checks were returned by the Bankers Trust Company to the State Bank of Maxwell on or about the 12th day of February, 1931, with the same instructions as before.

On March 1st and April 1st following the deposit of the checks plaintiff received bank balance statements, showing a credit for the amount of said checks.

Plaintiff received no notice of the nonpayment of said checks and assumed they had been paid up to about March 23, 1931. At that time the maker of the checks was insolvent and it was impossible for the plaintiff to collect thereon.

The evidence also showed that plaintiff's sales manager called at the maker's place of business about the 15th or 18th of February, 1931, to check his stock of merchandise; that one of his duties required this about every two weeks. He said that Mr. Tipton had in his garage and owned three new cars, one demonstrator, and about six used cars. That the reasonable value of the used cars was $1,400, of the new cars $2,800.

This is the only testimony on the part of the plaintiff as to the ownership of any property belonging to Mr. Tipton, the maker of the checks, about the 15th or 18th of February, 1931. Mr. Tipton's account in the State Bank of Maxwell was closed about the 18th of March, 1931. The evidence shows that the maker of the checks was insolvent on or about the 18th of March, 1931.

In this kind of an action it is necessary to show two elements. First, that the defendants were guilty of some negligence, and, second, that the plaintiff sustained damages by reason of such negligence. Fox v. Davenport Nat. Bank, 73 Iowa 649, on page 651, 35 N. W. 688. Under the law of this case, as given by the lower court, the first of these elements has been established.

The negligence being conceded, has the plaintiff made out a prima facie case of damages? It is claimed by appellant that the face value of the checks is *prima facie* evidence of the actual damages. In a line of cases where banks or other defendants have been held liable for conversion of papers, such is the rule. Mulenix v. Fairfield Nat. Bank, 203 Iowa 897, 209 N. W. 432; Callanan v. Brown & Co., 31 Iowa 333; Robinson v. Hurley, 11 Iowa 410, 79 Am. Dec. 497; Leonard v. Sehman, 206 Iowa 277, 220 N. W. 77; Peninsular Bank v. Citizens Nat. Bank, 186 Iowa 418, 172 N. W. 293, 19 A. L. R. 547.

There is, however, a different rule where the bank is sued for negligence in failing to notify the sender of the nonpayment of paper sent for collection.

It is plaintiff's claim that if he had received notice within a reasonable time after the nonpayment of the checks when sent to the State Bank of Maxwell about the 12th of February, 1931, that he would have been able to have obtained sufficient security to have covered the checks.

The rule as supported by the greater weight of authority is that in order to recover more than nominal damages the owner of the paper must prove that he suffered loss because of his inability to recover from the maker after receiving notice of nonpayment, and that if he had received such notice within a reasonable time, he could probably have recovered the amount due, or have obtained security therefor between the time he should have been notified and the time he was notified; and that no such recovery could be obtained after the receipt of such notice. Fox v. Davenport Nat. Bank, 73 Iowa 649, 35 N. W. 688; Terrell v. Commercial Nat. Bank

(Tex. Civ. App.), 199 S. W. 1133; Bank of Keo v. Bank of Cabot, 173 Ark. 1008, 294 S. W. 49; Northwestern National Bank v. People's State Bank, 109 Kan. 506, 200 P. 278, 19 A. L. R. 551.

In the case of Terrell v. Commercial Nat. Bank (Tex. Civ. App.), 199 S. W. 1133, 1134, the court says:

"It is very clear that plaintiff in error is not entitled to recover on account of the negligence of the banks in the presentation and handling of the draft, unless it has sustained damage in consequence thereof. * * * The burden of proof rested upon plaintiff in error to show substantial damage, and with reasonable certainty the amount thereof. Unless this was done, nominal damages only could be awarded. * * * In order to establish plaintiff's right of recovery in this case, based upon the fact that Adams had funds with the First National Bank, it was necessary for it to show by a preponderance of the evidence that it could and would have recovered and applied to the payment of Adams' indebtedness the money or some of the money which he had on deposit with said bank. Until it did this, it had shown no substantial damage resulting from the defendants' negligence. Had it done this, it would have established a *prima facie* case, and the measure of its damage would have been the amount it would have so recovered, not to exceed the amount of the draft. The amount of the draft is in no wise material in determining the measure of damage until a *prima facie* case had been made in the manner indicated, and it then becomes material only as limiting the amount of recovery."

In the case of Olds Motor Works v. First State Bank, 258 Mich. 269, 241 N. W. 813, 814, the Supreme Court of Michigan says:

"The burden was on plaintiff, not only to prove negligence on the part of defendant, but also the amount of loss in fact sustained as a result of that negligence. [Citing cases.] * * * The defendant is not liable unless it is made to appear that collection could have been made, and was not made, because of want of reasonable effort and diligence on defendant's part. This issue was one of fact. * * * We find no showing that defendant's delay, in reporting inability to make collection, resulted in actual loss to plaintiff."

"The liability of a bank with which a check is deposited for collection for negligence in not collecting and not giving notice of nonpayment until after the bank on which it was drawn suspended

payment because of insolvency, is only for such amount as the depositor will lose thereby, which he must allege and prove." 2 Michie on Banks and Banking, 1474 (1913 Ed.).

In a note to Northwestern National Bank v. Peoples State Bank (109 Kan. 506, 200 Pac. 278), appearing in 19 A. L. R. 551, the reporter says:

"Despite expressions to be found in some cases to the effect that the measure of damages for breach of duty by a bank in respect to the collection of commercial paper is the face of the paper involved, the true rule, supported by the overwhelming weight of authority, is that the damages are measured by the actual loss suffered by the owner of the paper, in consequence of the negligence or misconduct of the bank."

Bearing this rule in mind, is there sufficient evidence in this case to enable the jury to determine with a reasonable degree of probability that plaintiff could have recovered any substantial amount from the maker of the checks, if he had been promptly notified of the nonpayment thereof after the 12th of February, 1931, the date when the checks were sent to the Maxwell State Bank for collection. It is conceded that no notice of nonpayment was received by the plaintiff between the 12th of February and the 20th of March, following.

The evidence shows that the maker of the checks was insolvent on the 18th of March, 1931. Defendants' witness Wilson says that Tipton was insolvent on the 1st of February, 1931. But his evidence was contradictory because several times he also said he knew nothing of his financial condition before March 18 or 19, 1931. He knew that Tipton had some cash on March 18th, but that he had no personal knowledge of Tipton's affairs prior to March 18th and 19th. He made this statement in his direct examination, his cross-examination, his redirect examination, and in his further recross-examination. While he said once that he thought Tipton was insolvent, he said several times that he knew nothing of his financial condition before March 18, 1931. From his inconsistent and contradictory statements, the jury might have found that he knew nothing of his financial condition prior to March 18 and 19, 1931.

In such event, there would be no direct evidence of his insolvency prior to March 18, 1931. Plaintiff's witness Coe testified about merchandise owned by Mr. Tipton the 15th or 18th of Febru-

ary, 1931. Tipton continued in business until about March 18, 1931, and between the 14th of February and the 21st of March, the Schooler Motor Company sold him some cars and were paid therefor, the last sale having been made on March 17th.

Evidence of personal property owned by Mr. Tipton, the maker of the checks, was given by plaintiff's sales manager Coe. He said, "We check our dealers about every two weeks, as part of our duty to check up the property of customers." That on February 15th he was, in Tipton's place of business and examined the stock of merchandise; that at that time Tipton had three new cars, one demonstrator, and about six used cars, valued in all at $4,200.

To offset this evidence defendants offered the testimony of the witnesses Hattery, Moorefoot, McConnell, Nickerson, Coleman, Boehn, and Peck.

Hattery says he had a new car on Tipton's floor several different times, but did not know that it was on the floor the 18th of February.

Moorefoot bought a car from Tipton at Des Moines on February 11th, but he drove it home and has had it in his possession ever since.

McConnell bought a sport coupe on February 9th and kept it in Tipton's garage for two weeks.

Coleman, a mechanic in Tipton's garage until March 18th, says that he only knew of some second hand cars being there at that time; that he had about six used cars and Tipton only owned one *that he knew of*. He also says that there were no new cars around there at all and that he did not know that he had any other cars at that time.

Defendants' witness Peck worked in Tipton's garage for himself. He did not know what cars Tipton had in his garage on the 18th of February outside of his own. He bought a new car in February and that was on Tipton's floor all the time.

At the most this testimony would only raise a conflict on the question as to the ownership of these cars by Tipton between February 12 and March 18, 1931. If the jury should believe Coe's testimony, then Tipton, the maker of the checks, had $4,200 worth of property in his garage on the 15th or 18th of February, 1931, and, if this was after notice of nonpayment could reasonably have been given to the plaintiff, the evidence could have been considered by the jury in determining whether or not the plaintiff has proven his

damages by showing that he could probably have realized the whole or a substantial part of his claim against the maker of the checks by attaching or otherwise securing an incumbrance upon the property found in Tipton's possession after February 15 or 18, 1931.

The burden was upon the plaintiff to show this by a preponderance of the evidence. In order to prove this it was not necessary for the plaintiff to show that it actually commenced legal proceedings immediately after he should have received notice of nonpayment and that he did actually attach said property or secure an incumbrance thereon because in such event this suit would not have been necessary.

The evidence shows that as soon as plaintiff received the first notice of nonpayment in February plaintiff immediately sent a man to Maxwell to find out why the checks were not paid. There was testimony in the case from which it could be found that he was assured the checks would be paid immediately if they were returned. The checks were returned, the plaintiff was given credit therefor in its account at the Bankers Trust Company. This credit stood on the bank books until after the 1st of April following. No further notice of nonpayment was received by plaintiff until about March 23, 1931, and in the absence of further notice plaintiff assumed they were paid.

As soon as plaintiff was advised of this nonpayment, about the 23d of March, 1931, plaintiff immediately sent its attorney to Nevada to secure an adjustment. At that time it was too late.

Defendants contend that from this record it would be impossible for a jury to find that plaintiff could have secured payment of the whole or a substantial part of its claim against Tipton, if it had been notified of the nonpayment of the checks promptly after they were sent to the State Bank of Maxwell on February 12th.

In order to sustain this contention it would be necessary for this court to hold, as a matter of law, that the plaintiff would have been unable to collect or obtain security for the checks sent to the Bank of Maxwell.

The jury would be warranted in finding that on the 15th or 18th of February, 1931, the maker of the checks had property valued at about $4,200. The evidence shows that as soon as plaintiff received both the first and second notice, it was diligent in attempting to secure a payment. After receiving the first notice about the 12th of February, plaintiff immediately sent one of its agents to Ne-

vada to secure payment. From his testimony the jury would be warranted in finding that the Bank of Maxwell assured him of the payment of the checks as soon as returned. They were returned. Plaintiff had been given credit in its checking account with the Bankers Trust Company therefor. Plaintiff received two bank balance statements, showing that this credit had been given, and were thereby lulled into the belief that the checks were paid.

Plaintiff received no further notice of nonpayment until March 23d when it immediately sent its attorney to Nevada for the purpose of securing payment of the checks. As before stated this was too late.

There is no positive evidence tending to show the defendants' insolvency before the 18th of March, 1931, and until insolvency is established solvency is presumed.

In the absence of evidence to the contrary solvency is presumed. Sherman v. Smith, 185 Iowa 654, 169 N. W. 216; Carter v. Shrader, 187 Iowa 1245, 175 N. W. 329.

With or without this presumption we cannot say, as a matter of law, from the record in this case that there was no evidence from which the jury could find that plaintiff could probably have collected the whole or a substantial amount due upon the checks between the time that it should have received notice in February and the 23d of March, 1931. We believe this was a question for the jury.

In order to make a jury question it was not necessary to be sufficient to show as a matter of law that the plaintiff could probably have collected a substantial amount upon these checks. This was a question for the jury. We believe the lower court was in error in limiting the damages to $1.00.

We believe the court was in error in not submitting this question to the jury. The judgment of the lower court is reversed.

KINDIG, C. J., and STEVENS, UTTERBACK, ANDERSON, DONEGAN, ALBERT, and EVANS, JJ., concur.